IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF:<br><br>CENTENNIAL COMMUNICATIONS, INC.<br>Debtor.<br>_____ | BK. No. 81-82295/A 01-8033/<br>A 93-8022 |
| ESTATE OF CENTENNIAL<br>COMMUNICATIONS, INC.,<br><br>　　　　Appellant,<br><br>　　v.<br><br>MILDRED LONGTAIN,<br><br>　　　　Appellee.<br>_____ | Case No. 8:05-CV-256<br><br>ORDER |

This matter is before the court on the appeal by Centennial Communications, Inc., (hereinafter "the debtor" or "the estate") debtor's appeal of the bankruptcy court's order denying debtor's motion for reconsideration of an earlier order that allowed Mildred Longtain's claim for a super-priority administrative expense in the amount of $192,163.78, and allowed Ms. Longtain to share in a *pro rata* distribution for the remainder of her claim, which includes a loan to the debtor or its officers in the principal amount of $132,500.00. *See* Filing No. 1. *See also* Order, *In the Matter of Centennial Communications, Inc.*, No. BK81-82295 (Bankr. D. Neb. Apr. 6, 2005) (Filing No. 491) (hereinafter, "Bankruptcy Action"); Order, Bankruptcy Action (Bankr. D. Neb. Sept. 23, 2004) (Filing No. 451).

### I. BACKGROUND

This action has a long and tortured history, with which the bankruptcy court is intimately familiar. Briefly, this action involves the bankruptcy proceedings of Centennial

Communications, Inc., d/b/a KESY and KOOO Radio. The case was first filed in 1981 and involves proceedings in several states. In 1994, the bankruptcy court entered judgment against George Mac Vogelei, who once represented Centennial in connection with its reorganization plan, in the amount of $904,000.00 in an adversary proceeding. *See* Judgment, *Estate of Centennial Communications, Inc. v. George Mac Vogelei and Richard Ostberg*, No. A93-08022 (Bankr. D. Neb. Dec. 23, 1994) (Filing No. 37). The bankruptcy court found that Vogelei had converted Centennial's tax refund checks, and lied and acted in bad faith in connection to the bankruptcy proceedings. *Id.*, Filing Nos. 60 & 61. Because other bankruptcy proceedings involving Centennial were pending in California, the bankruptcy case in the District of Nebraska was closed in 1999. Bankruptcy Action, Filing No. 375.

The case was reopened on Dec. 22, 2000, on motion of the bankruptcy trustee, for the purpose of pursuing the claims of the estate against law firms, including Pettit and Martin, and others who conspired with or aided Vogelei in concealing assets. Bankruptcy Action, Filing No. 381. The bankruptcy court appointed Russell E. Vigil as the Advisory Representative and/or Agent of the Estate and authorized the estate to pursue lawsuits on its behalf, to continue collection efforts against Vogelei and "to continue to incur expenses and to borrow the necessary monies needed for expenses of the estate from Mildred Longtain, Paul Bachman, and any other entity or individual" to finance litigation and collection efforts. Bankruptcy Action, Filing No. 382. The estate subsequently recovered funds in the amount of $400,000.00 as a result of its efforts, and Mildred Longtain submitted a claim for $1,939,562.92, including interest. *See* Bankruptcy Action, Filing No. 399. Both the estate and the bankruptcy trustee objected to the claim.

Bankruptcy Action, Filing Nos. 409 & 422.

A hearing on Ms. Longtain's claim, among others, was held on May 18, 2004. Hearing Transcript ("Hr'g Tr."), Record on Appeal ("R."), Pt. 12 (Filing No. 2); Bankruptcy Action, Filing No. 501.  At the hearing, counsel for the estate stated that the estate's investigation had concluded that George Mac Vogelei and Richard Ostberg had obtained fraudulent and *ultra vires* loans on behalf of Centennial and "were simply running a con to collect money in the name of the estate for their own benefit."  Hr'g Tr. at 5.  The estate also contended with respect to some of the loans, that "it is our understanding, [Mildred Longtain] was somewhat of an investor in Eugene, Oregon, and so some of these funds which were advanced with the promise by Mr. Ostberg that she would get her money back, had an investment feature for herself, personally, with regard to these amounts." *Id.* at 9.  Several declarations were offered and admitted into evidence at the hearing. See Bankruptcy Action, Filing Nos. 433, 437.  The parties were permitted to submit additional documentation after the hearing.  Hr'g Tr. at 57.

In response to the objections to her claim, Mildred Longtain made a showing that the loans and guarantees for which she sought reimbursement had been executed by Richard Ostberg, as President of, and on behalf of Centennial Communications. Bankruptcy Action, Filing Nos. 442 and 443, Guarantee and Promissory Notes.  Ms. Longtain also produced a partnership agreement with Richard Ostberg, Russell Vigil, and Paul Bachman, in which the partners agreed that Ms. Longtain was to be awarded first priority in the event of any recovery. Bankruptcy Action, Filing No. 442, 1999 Partnership Agreement.  Moreover, Russell Vigil recommended that the bankruptcy court award the lenders first priority, noting "that they had suffered through extensive and prolonged

3

litigation." Bankruptcy Action, Filing No. 447, Supplemental Decl. of Russell Vigil at 6.

The bankruptcy court found that the "principal amount of Ms. Longtain's claim, for both the loans and the advances, including the interest she paid on her credit card advances and home equity loan, is allowed," and that "the advances will be given priority in the payment scheme." Bankruptcy Action, Filing No. 451, Order at 3. The court noted "[g]iven the unusual circumstances and difficult nature of this Action, and particularly noting the age of the Action and the decades of litigation involved—which is not over yet—it seems only right to distribute the available money first to the people who financially facilitated its collection." *Id.* The bankruptcy court also found that the remainder of the claims, including Ms. Longtain's claim for loans to Centennial, should share *pro rata* in the balance of the available funds. *Id.* at 5. The court disallowed claims for interest unless funds remained after all claims were paid in full. *Id.*

The estate moved for reconsideration of the bankruptcy court's order, raising the same issues it raises here. Bankruptcy Action, Filing No. 456. The parties again filed additional submissions. Bankruptcy Action, Filing Nos. 460, 479, 480, 487. After review of the additional submissions, the bankruptcy court denied the motion for reconsideration. Bankruptcy Action, Filing No. 491.

On appeal, the estate concedes that payment of $116, 678.33 to Mildred Longtain for administrative expenses is appropriate, but contests the bankruptcy court's allowance of the remainder of Ms. Longtain's super-priority administrative claim, or $75,485.45. The estate contends that the advance of $75,485.45 was not a reasonable and necessary expense for the purpose of pursuing actions against and recovery from Vogelei and from the Pettit and Martin law firm. The estate characterizes these sums as amounts that

Richard Ostberg "fleeced" from Ms. Longtain for his own benefit, and not for the benefit of the estate. The estate further contends that loans to Centennial in the amount of $132,500.00 were made to Ostberg for the benefit of another entity, Eugene Broadcasting One, Ltd. (KEZL) and represented Ms. Longtain's investment therein.

## II. DISCUSSION

The district court reviews a bankruptcy court's determinations of fact for clear error and its legal conclusions *de novo*. *In re Markmueller,* 51 F.3d 775, 776 (8th Cir. 1995). The district court sits as an appellate court when an appeal is taken from the bankruptcy court. *See* 28 U.S.C. §1334. The district court may affirm, reverse or modify the bankruptcy court's ruling or remand the case for further proceedings. Fed. R. Bankr. P. 8013. The bankruptcy court's legal conclusions reviewed *de novo* and its findings of fact are reviewed under the clearly erroneous standard. *See Brown v. Mitchell (In re Arkansas Communities, Inc.),* 827 F.2d 1219 (8th Cir. 1987). A factual finding is clearly erroneous if it is not supported by substantial evidence in the record, if it is based on an erroneous view of the law, or the reviewing court is left with the definite and firm conviction that a mistake has been made. *See Johnson v. Arkansas State Police,* 10 F.3d 547, 552 (8th Cir. 1993).

Section 503 of the Bankruptcy Code provides for allowance of claims for administrative expenses including the actual, necessary costs of preserving an estate. 11 U.S.C. § 503(b)(1)(A). Under Section 507(a)(1) of the Bankruptcy Code, claims allowed as administrative expenses as defined in § 503(b) are given a first priority distribution. 11 U.S.C. § 507(A)(1). In determining whether a claim is an "actual, necessary 'cost and expense' of preserving the estate," courts generally consider whether

5

the expense arose from a transaction with the estate, and whether it benefitted the estate in some demonstrable way.  *In re Williams*, 246 B.R. 591, 595 (8th Cir. 1999).  Section 503(b)(1)(A) requires the creditor to demonstrate that the expenses provided a tangible benefit to the bankruptcy estate before they may be granted administrative expense status.  *Id.*  Moreover, the policy behind granting administrative expense priority only to "actual, necessary" costs and expenses is to provide an incentive for creditors to continue or commence doing business with an insolvent entity.  *Id.*

The court has reviewed the record, the parties' submissions, and the transcript of the hearing.  The court finds no error by the bankruptcy court. The bankruptcy court credited Ms. Longtain's assertion that all sums she advanced were expended for the benefit of the estate and the estate has not presented evidence to controvert that fact. Moreover, the estate has failed to produce sufficient evidence to support its contention that the loans of $132,500.00 from Mildred Longtain to Centennial were not made for Centennial's benefit.  The evidence shows that Richard Ostberg executed the notes as president of Centennial.  There has been no showing that Ms. Longtain, at that time, had any reason to believe that Ostberg was "ultra vires" in connection with the transactions. Further, the estate has not shown that the loans to Centennial were in fact "investments" by Ms. Longtain in Eugene Broadcasting.  The bankruptcy court considered and rejected that position. Bankruptcy Action, Filing No. 491 (implicitly adopting Ms. Longtain's position as set forth in Filing No. 487).  The evidence shows that the loans were made to Centennial as a corporate entity, and not to individuals.  See Longtain Decl. at 8-10, Bankruptcy Action, Filing No. 487.  The evidence overwhelmingly supports the finding that Ms. Longtain was a creditor of Centennial; she would have had no incentive to finance

litigation in pursuit of its assets if she had not been a creditor.  The court finds no error in the bankruptcy court's findings of facts or its application of the law.  Accordingly, the order of the bankruptcy court will be affirmed.

IT IS ORDERED:

1. The order of United States Bankruptcy Court Chief Judge Timothy Mahoney, Filing No. 456 in BK81-82295, is affirmed; and

2. The debtor's appeal is hereby dismissed.

DATED this 15th day of February, 2006.

BY THE COURT:

s/ Joseph F. Bataillon
Joseph F. Bataillon
United States District Judge